# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,          :
                            :         ID No. 1609020213

v.                          :         In and For Kent County
                            :

ROBERT HARDING,          :
                            :

Defendant.              :

## ORDER

Submitted:  February 28, 2017
Decided:  March 13, 2017

On this 13th day of March 2017, having considered Defendant Robert Harding's (hereinafter "Mr. Harding's") motion to suppress and the State's response, it appears that:

1. Mr. Harding challenges the sufficiency of a search warrant authorizing the search of his residence.  The facts cited herein are those found within the four corners of the affidavit submitted in support of the challenged warrant.  Mr. Harding resides at 210 Reeves Crossing Road, Felton, Delaware (hereinafter the "210 address").  Prior to the execution of a search warrant at that premise, Mr. Harding was not a target of a drug investigation and the police did not suspect him of any criminal activity.  However, due to a police investigation into drug manufacturing allegedly occurring at the nearby residence at 202 Reeves Crossing Road, Felton, Delaware (hereinafter the "202 address") and foot traffic between the two, the police obtained a search warrant for the 210 address as well as the 202 address.  Pursuant to the search of Mr. Harding's 210 address, the police found marijuana and several weapons.

2. The affidavit provides that the police conducted an investigation into alleged drug manufacturing at the 202 address after a Delaware State Police officer observed Daniel Dilmore (hereinafter "Mr. Dilmore") purchase Sudafed. Through a subsequent investigation, they learned that he had made several similar previous purchases. As a result, the police conducted an address history check for Mr. Dilmore and discovered that he resided at the 202 address but also had a "history" at the 210 address. The police investigation included surveillance of the 202 address, but because there were two neighboring single wide mobile homes, the police were able to see what was occurring at three homes, including the 202 address.[1]

3. The police also received a tip from a concerned citizen regarding drug activities at the 202 address. The concerned citizen was worried about the health and safety of Morgan Rodesky, a woman he or she identified as residing at the 202 address. According to the concerned citizen, he or she visited the 202 residence on multiple occasions and observed a white female, he or she knew only as "D", actively cooking methamphetamine. The concerned citizen also purchased Sudafed for Morgan Rodesky and took it to the 202 address.

4. The police then conducted computer inquiries related to the 210 and 202 addresses. From this, the police identified Diane Hawkins (hereinafter "Ms. Hawkins"), a white female, as a possible suspect, but the affidavit did not identify the reasons that she became a suspect. The police also determined that Ms. Hawkins had an address history at both the 202 and 210 addresses.

5. During the course of the investigation, the police pulled the trash from the property. All three units shared a single receptacle. In the trash, there were

---

[1] The three mobile homes at issue had separate addresses (218 Reeves Crossing Road, 210 Reeves Crossing Road, and 202 Reeves Crossing Road).

separately sealed trash bags. In one of the bags, the police found items commonly used in the manufacturing of methamphetamine.[2] The sealed trash bag that contained those items, however, was clearly associated with the 202 address as evidenced by the inclusion of a receipt with Mr. Dilmore's name, signature, and his 202 address.

6. The police surveillance team also observed Ms. Hawkins exit the 210 address on numerous occasions. On one such occasion, Ms. Hawkins left the 210 address, went into the 202 address, and then left with another individual. The two drove to the Wal-Mart in Milford, Delaware where the police observed the other individual purchase Sudafed, although not while in the presence of Ms. Hawkins. Ms. Hawkins was apart from that individual and met him outside the store after both apparently had separately completed their business. While the two were at the Wal-Mart, the police continued surveillance at the 202 address and observed subjects walk to and from the 202 and 210 addresses. One of the people who left the 210 address matched the description of Morgan Rodesky, but the police were unable to positively identify that individual.

7. The police presented an affidavit with this information to a magistrate for a search warrant for the 202 address and the 210 address. Mr. Harding challenges the sufficiency of the 210 warrant. When executing the 210 address warrant, the police found 502.76 grams of marijuana and several weapons for which the police arrested Mr. Harding.

---

[2] The trash contained a pharmacy receipt for the purchase of Sudafed, a second pharmacy receipt with Mr. Dilmore's name, signature, and his 202 address on it, one empty package of Energizer Lithium batteries, two cut Lithium batteries with the Lithium removed, two empty Sudafed blister packets, one empty box of Sudafed, plastic tubing with a soda cap attachment on one end, lighter fluid, one water pack from the inside of a cold compress, and a Mountain Dew bottle with white residue. The affiants noted in the affidavit that through their training, experience, and knowledge, they knew these items to be key ingredients in the illegal manufacture of methamphetamine.

3

8. Mr. Harding argues that the search warrant was devoid of any nexus between the 210 address and evidence of criminal activity. Therefore, Mr. Harding argues that the warrant lacked probable cause to search the 210 address. Furthermore, Mr. Harding argues that the three mobile homes were three separate residences, and the 210 address clearly belonged to Mr. Harding who was not the target of the investigation. He also argues that as this was not a circumstance of communal living, and therefore, the sufficient probable cause to search the 202 address and Mr. Dilmore was not sufficient to justify a search of the 210 address.[3]

9. In response, the State argues that the affidavit properly established a nexus between the 210 address and criminal activity making it likely that evidence of drug manufacturing would be found in that residence. The State maintains that the items located during the trash pull do not clearly indicate that they came from the 202 residence because the police found those items in a communal trash bin. Furthermore, the State alleges that (1) the address history of both Mr. Dilmore and Ms. Hawkins linking them at some point in the past in an unspecified way to the 210 residence; (2) the foot traffic between the two residences; and (3) that Ms. Hawkins left 210, entered 202, and then left with another individual to Wal-Mart, where that individual purchased Sudafed outside her presence, together sufficiently support probable cause for the warrant.

10. As Mr. Harding challenges the issuance of a search warrant, the Court is confined to a four-corners analysis.[4] Under the Fourth Amendment of the United States Constitution and the Delaware Constitution, a magistrate may only issue a

---

[3] The Court does not further address the communal living issue because the State does not seek to justify the search of the 210 address on that basis. Regardless, the 210 address is clearly referenced in the affidavit as being a separate residence and there are no facts cited in the affidavit permitting an inference that this case involves communal living space.

[4] *E.g.*, *LeGrande v. State*, 947 A.2d 1103, 1107 (Del. 2008).

warrant that is based on probable cause.[5]  It is well settled that "[a]n affidavit in support of a search warrant must, within the four-corners of the affidavit, set forth facts adequate for a judicial officer to form a reasonable belief that an offense has been committed and the property to be seized will be found in a particular place."[6] There must be a nexus sufficiently linking the items sought to the place to be searched.[7]  The magistrate must make this probable cause determination using a practical, common sense approach.[8]  Accordingly, "a neutral and detached magistrate may draw reasonable inferences from the factual allegations in the affidavit."[9]  Moreover, the issuing magistrate must make the probable cause determination based on the totality of the circumstances.[10]

11. Upon review of a magistrate's decision, the reviewing court is to give "great deference . . ." to a magistrate's finding of probable cause, and that review "should not, therefore, take the form of a *de novo* review."[11]  Despite the deference afforded a magistrate's probable cause determination, a substantial basis review requires the reviewing court to determine whether the magistrate's decision

---

[5] U.S. Const. amend. IV; Del. Const. art. I § 6.

[6] *E.g.*, *Sisson v. State*, 903 A.2d 288, 296 (Del. 2006).

[7] *State v. Friend*, 2016 WL 723170, at *5 (Del. Super. Ct. Dec. 13, 2016).

[8] *E.g.*, *State v. Holden*, 60 A.3d 1110, 1114 (Del. 2013).

[9] *E.g.*, *Sisson*, 903 A.2d at 296.

[10] *E.g.*, *LeGrande*, 947 A.2d at 1107–08; *Sisson*, 903 A.2d at 296.

[11] *E.g.*, *Holden*, 60 A.3d 1110, 1114.  The great deference given to a magistrate's probable cause determination stems from the United States Supreme Court's practical approach to the Fourth Amendment, which seeks to encourage police officers to obtain a warrant.  *Id.*  The Court recognized that "[a] grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting."  *Id.* at 1114–15 (*quoting United States v. Ventresca*, 380 U.S. 102, 108 (1965)).

reflected a proper "analysis of the totality of the circumstances,"[12] and "whether the magistrate had a substantial basis for concluding that probable cause existed."[13] In making this determination, the reviewing court must not take "a hyper-technical approach to reviewing a search warrant affidavit."[14] Instead, in order for a warrant to be upheld, "[t]he affidavit must set forth facts permitting an impartial judicial officer to reasonably conclude that the items sought would be found at the location."[15]

12. Here, the State relies on the fact that there is clear evidence of drug manufacturing occurring at the 202 residence, the fact that there is foot traffic between the two addresses, both by a resident at 202 and by other unidentified people, and the fact that the suspects under investigation for methamphetamine manufacturing have an address *history* at the 210 address. These circumstances combined, however, were not enough for a magistrate to find a fair probability that evidence of methamphetamine manufacturing would be found at the separate 210 address even when viewing the decision deferentially and in light of the totality of the circumstances.

13. Namely, the affidavit in support of the warrant lacks evidence linking criminal activity and evidence of drug manufacturing to the 210 address. While the State argues that the items clearly associated with methamphetamine manufacturing found during a trash pull cannot definitively be linked to any of the three residences because it was found in a communal trash can, the only drug related evidence was in a *separate bag* that was clearly linked to the 202 address.

---

[12] *E.g., LeGrande*, 947 A.2d at 1108.

[13] *E.g.*, *Sisson*, 903 A.2d at 296.

[14] *LeGrande*, 947 A.2d at 1108.

[15] *Id.*

This bag, in a shared trash bin that serviced three separate residences, contained an empty package of Energizer Lithium batteries, two cut Lithium batteries with the lithium removed, two empty Sudafed blister packets, one empty box of Sudafed, a plastic tubing with a soda cap attachment on one end, lighter fluid, a water pack from the inside of a cold compress, and a Mountain Dew bottle with white residue. These materials, in conjunction with the officer affiants' cited expertise, provide clear probable cause of drug manufacturing. However, these items were found within one bag that also contained a pharmacy receipt with Mr. Dilmore's name, signature, and the 202 address on it. This receipt is sufficient to link the trash's contents to the 202 address.[16] However, despite the State's argument, this is not evidence of criminal activity that could reasonably be linked to the 210 address.

14. The State also argues that Mr. Dilmore and Ms. Hawkins' address history at the 210 address and foot traffic between the two residences are sufficient to link criminal activity to the 210 address. The State argues that a reasonable person could expect to find evidence at that separate residence based on this information.

15. The Court disagrees. An address history at the 210 address and foot traffic are innocent activities. While many jurisdictions are willing to find probable cause on a showing of innocent activity,[17] the Delaware courts have

---

[16] *See State v. Dickerson*, 92 P.3d 613, 2004 WL 1489048, at *3 (Kan. Ct. App. July 2, 2004) (Table) (finding that evidence of drugs found during a trash pull was clearly linked to the defendant after the police found a bag of trash containing evidence of drugs and a prescription sack with the defendant's name on it despite the defendant's argument that the bag could have been used by any of the other residents).

[17] *See, e.g.*, *United States v. Humphries*, 372 F.3d 653, 657 (4th Cir. 2004) (noting that "even seemingly innocent activity when placed in the context of surrounding circumstances" can give rise to probable cause); *People v. Garcia*, 808 N.Y.S.2d 34, 35 (N.Y. App. Div. 2005) (holding that "[p]robable cause was established through a very lengthy chain of incriminating circumstances" even though "each piece of information, viewed singly, might have had an innocent explanation").

viewed wholly innocent activity skeptically when examining justification for searches.[18] The Delaware Supreme Court has said "[t]he possibility that there may be a hypothetical innocent explanation for each of several facts revealed during the course of an investigation does not preclude a determination that probable cause exists . . . ."[19] Nevertheless, it more recently explained how a Delaware court is to treat wholly innocent activity such as in the case at hand.[20] Namely, in *Lopez-Vazquez v. State*, the Delaware Supreme Court explained that

> it is possible for factors, although insufficient individually, to add up to reasonable suspicion—that is the nature of a totality of the circumstances test. But we think it impossible for a combination of wholly innocent factors to combine into a suspicious conglomeration unless there are concrete reasons for such an interpretation.[21]

In *Lopez-Vazquez*, the Delaware Supreme Court examined this issue in the context of reasonable articulable suspicion. It is no less applicable when evaluating the sufficiency of probable cause. In either level of analysis, innocent activity should be evaluated under the totality of the circumstances. On the other hand, under Delaware law, wholly innocent activity does not establish probable cause unless there are concrete reasons for such an interpretation.

16. While the affidavit recites an address history check and that both Mr. Dilmore and Ms. Hawkins have a history at the 210 address, the affidavit does not set forth what that history entails. There is nothing explaining or providing any

---

[18] *Lopez-Vazquez v. State*, 956 A.2d 1280, 1288 (Del. 2008).

[19] *State v. Maxwell*, 624 A.2d 926, 930 (Del. 1993) (finding probable cause existed for an arrest).

[20] *Lopez-Vazquez*, 956 A.2d at 1288.

[21] *Id.* at 1287–88. While this case analyzed reasonable suspicion to conduct a Terry stop, the Court's finding is applicable to the case at hand because both probable cause and reasonable suspicion require a totality of the circumstances test. Moreover, a probable cause determination requires a heightened finding compared to a reasonable suspicion, making it more likely that the same standard would apply in the context of probable cause.

context regarding this history. An issuing magistrate could not reasonably determine that the two individuals had current links to the 210 address. Without more information, the fact that Mr. Dilmore and Ms. Hawkins had a history at the 210 address does not provide evidence for a reasonable person to believe there would be a fair probability that police would find evidence at that location.

17. The foot traffic, by both Ms. Hawkins and other unidentified individuals, is the strongest link between the 202 address and the 210 address. However, this link is insufficient to show criminal activity, even when considering the other circumstances of this case. There is no indication in the affidavit that through the affiants' training, experience, or knowledge they know heavy foot traffic is often associated with any criminal activity. Furthermore, there is no indication in the affidavit that this is a high crime area, which could better support an inference that heavy foot traffic was evidence of criminal activity. Without such additional information, next door neighbors walking back and forth between their homes is wholly innocent activity. Similarly, the foot traffic by other unidentified individuals without more information is also wholly innocent activity. This conduct does not give rise to probable cause to search a neighbor's home, absent further context which the affidavit in this case lacks.[22]

18. Likewise, the State incorrectly argues that there was probable cause to search the 210 address because of clear probable cause for the 202 address and that Ms. Hawkins was seen coming and going from her neighbor's 210 address on numerous occasions. This does not reasonably justify a finding of a fair

---

[22] *See, e.g.*, *Bailey v. Superior Court*, 15 Cal. Rptr. 2d 17, 20 (Cal. Ct. App. 1992) (finding that the search warrant was not supported by probable cause because the only evidence of criminal activity was heavy foot traffic and "heavy foot traffic may just as likely reflect that the suspect is engaged in innocent activity, such as selling soap or cosmetics"); *State v. Gentile*, 646 S.E.2d 171, 175 (S.C. Ct. App. 2007) (finding that a warrant was not supported by probable cause because the only evidence of narcotic activity was heavy foot traffic).

9

probability that the police would discover evidence of a crime at her neighbor's residence. The United States Supreme Court recognized that "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause . . . ."[23] Instead, the police must base a search on particularized probable cause.[24] Accordingly, the fact that there was probable cause to search the 202 address does not establish probable cause to search the 210 address even though Ms. Hawkins was seen coming and going from the 210 address.[25] In order to support probable cause based on one's company or environment, "there must be other factors . . . which aid in formulating probable cause."[26] Here, there are insufficient facts cited to support a finding of probable cause given what otherwise is wholly innocent activity.

19. Two factually similar Delaware cases to the case at hand were *State v. Ada*[27] and *State v. Cannon.*[28] Both cases involved suppression of separate residence searches with stronger evidence of criminal activity regarding the residences than in the case at hand. First, in *Ada*, the Delaware Superior Court granted defendant's motion to suppress a search of a different home linked to the

---

[23] *Ybarra v. Illinois*, 444 U.S. 85, 86 (1979).

[24] *Id.* While the *Ybarra* case was in the context of a search of an individual, it also applies in the context of a search of one's home as the home is afforded the utmost protection.

[25] *See United States v. Hiruko,* 320 F.Supp.2d 26, 33 (E.D.N.Y. 2004) (stating that "[p]roximity to criminal conduct is generally insufficient to establish probable cause; rather, a search or seizure of a person must be supported by probable cause particularized with respect to that person"); *Martin v. City of N. Coll. Hill*, 2008 WL 4070275, at *5 (S.D. Ohio Aug. 27, 2008) (stating that "a search or seizure must be supported by individualized probable cause which cannot be established by the fact that there coincidentally exists probable cause to arrest another or to search or seize the premises").

[26] *Martin*, 2008 WL 4070275, at *5.

[27] 2001 WL 660227 (Del. Super. Ct. June 8, 2001).

[28] 2007 WL 660227 (Del. Super. Ct. June 8, 2001).

defendant.[29]  A concerned citizen contacted the police department to inform them that the defendant was selling illegal drugs from an apartment in the West Court Apartments.[30]  The police then set up a surveillance team to observe the defendant. Upon observing him leave a West 4th Street residence, the police expanded the surveillance to include that location.[31]  During this surveillance, police "witnessed [d]efendant coming and going from the [West 4th Street] residence and observed the [d]efendant use a key to lock and unlock the front door.  Defendant was once observed leaving the residence with a gym bag and was followed to the area of the [West Court Apartment]."[32]  The police applied for a search warrant for both the defendant's West Court Apartment and the West 4th Street residence based on the information they collected while monitoring the defendant.  In the affidavit, the affiants stated that they were "very familiar with drug dealers who often keep their main supply location separate from their sales location. This is commonly done to prtect [sic] the dealers [sic] larger quantity of drugs in case the police execute a search warrant at the sales location."[33]  Based on this information, a magistrate issued a search warrant for both locations.[34]

20. In *Ada*, however, despite this information (1) linking the defendant with drugs, and (2) separately linking the defendant to the West 4th Street residence, the court determined that there was an insufficient probable cause to search the West

---

[29] *Ada,* 2001 WL 660227, at *5.

[30] *Id.* at *1.

[31] *Id.*

[32] *Id.* at *5.

[33] *Id.*

[34] *Id.* at *2.

11

4th Street location.[35] The court noted that the facts failed to establish a nexus linking the evidence the police sought to the West 4th Street residence "given that police observed no illegal or suspicious activity occurring at the residence."[36]

21. As the evidence in *Ada* was insufficient to support a finding of probable cause because the police did not observe any illegal or suspicious activity occurring at the West 4th Street residence, here too, the Court must find that the warrant lacked probable cause. Similar to the issuing judge in *Ada*, the issuing magistrate here did not have a substantial basis to conclude that probable cause existed for the 210 address on the basis of foot traffic between the 202 and 210 addresses by a suspect (despite her address history at the 210 address) and other unidentified individuals.

22. Second, in *State v. Cannon*, the court reviewed a search warrant for the defendant's home, vehicle, and person, and granted defendant's motion to suppress evidence found in his residence.[37] In *Cannon*, a concerned citizen contacted the police to advise them that the defendant was selling drugs at two locations in Wilmington, which a crime stop tip later corroborated.[38] The police obtained information regarding defendant's residence and the car he drove.[39] The police then conducted surveillance on the defendant and observed him drive to specific areas around Wilmington, speak with three individuals, and then drive to another location at which the three individuals entered defendant's car and then exited it a

---

[35] *Id.* at *5.

[36] *Id.*

[37] *Cannon*, 2007 WL 1849022, at *1.

[38] *Id.*

[39] *Id.*

few minutes later.[40] The police then observed defendant enter a different vehicle, which he soon exited.[41] When the police stopped the vehicle the defendant had just exited, they found cocaine, which the driver admitted he received from the defendant.[42] The police applied for, and obtained, a search warrant for defendant's residence, vehicle, and person, based on the above facts and statements, and based upon the affiant's training, experience, and participation in other drug investigations.[43]

23. The Superior Court found that the warrant for defendant's residence lacked probable cause, because it did not establish a sufficient nexus to the home.[44] The Court determined that because the criminal activity took place outside defendant's home, in order to establish probable cause to search the residence, the warrant needed to set forth factual information adequate to support probable cause for the home; there, the affidavit could not merely rely on the affiant's training, experience, and knowledge.[45] As there were no facts linking criminal activity to the residence, the court determined that the warrant lacked probable cause.[46] Similarly here, the affidavit lacked factual information linking the 210 address to any criminal activity. Pursuant to the totality of the circumstances test, the facts cited in the 202 address affidavit did not establish probable cause for the magistrate to issue this warrant.

---

[40] *Id.*

[41] *Id.* at 2.

[42] *Id.*

[43] *Id.*

[44] *Id.* at 1.

[45] *Id.* at 4.

[46] *Id.* at 5.

13

WHEREFORE, for the reasons set forth herein, the Court GRANTS Mr. Harding's motion to suppress.

**IT IS SO ORDERED.**

/s/Jeffrey J Clark
Judge