Thomas LeGRANDE, Defendant
Below–Appellant,

v.

STATE of Delaware, Plaintiff
Below–Appellee.

No. 202, 2007.

Supreme Court of Delaware.

Submitted: Jan. 30, 2008.
Decided: April 22, 2008.

Christopher D. Tease, Esquire, Wilmington, Delaware, for appellant.

Kevin Carroll, Esquire, of the Department of Justice, Wilmington, Delaware, for appellee.

Before STEELE, Chief Justice, HOLLAND, JACOBS, RIDGELY, Justices, and NOBLE, Vice Chancellor,[1] constituting the Court *en Banc*.

RIDGELY, Justice.

Defendant–Appellant Thomas LeGrande was convicted by a jury in Superior Court of various drug and weapons charges and sentenced as a habitual offender to life imprisonment. On appeal, LeGrande argues that the trial judge erred when he (1) denied his motion to suppress evidence obtained pursuant to a search warrant, (2) overruled his objection to testimony which, according to LeGrande, effectively informed the jury of his probationary status, and (3) gave a curative instruction to the jury that he was familiar with the background of the case and the testifying police officer was not involved in a drug trafficking investigation.

LeGrande's first argument involves the legal sufficiency of an anonymous tip about concealed, possessory crimes to support the issuance of a search warrant for his apartment. The informant provided authorities with LeGrande's identity, the address of his apartment, his probationary status, and the identity of the occupant of another apartment on the premises who was wanted on an outstanding

---

1. Sitting by designation pursuant to Del. Const. art. IV, § 12 and Supr. Ct. R. 2 and 4.

warrant. The informant also said that LeGrande possessed specific contraband in his padlocked apartment. Law enforcement officers corroborated the accuracy of the information on LeGrande's address, his probationary status, his locked apartment, and the existence of a warrant for the occupant of a separate apartment, but did not corroborate anything the anonymous informant told them about contraband in LeGrande's apartment. The limited information the police had was included in the affidavit in support of an application for a search warrant. A Justice of the Peace found that the affidavit established probable cause and issued the warrant. A search pursuant to that warrant led to the discovery of the evidence in LeGrande's apartment, which is the subject of his motion to suppress.

We conclude that the information provided in the affidavit was insufficient as a matter of law to establish a substantial basis for concluding there was probable cause that contraband or evidence would be found inside LeGrande's apartment. Because the affidavit did not contain any corroborating information to establish the reliability of the anonymous tipster's assertion of illegality, the motion to suppress should have been granted. Accordingly, we reverse.

## I. Facts

A probation officer received a tip from one of his probationers that LeGrande, who was also on probation, possessed certain weapons and marijuana in his apartment. This probation officer transferred the call to a second probation officer to ensure the anonymity of the informant.

According to the second officer, the informant was an acquaintance of LeGrande who knew he was on probation. The informant described him, the occupant of another apartment in the building (Darryl Graham), the layout of the building, and added that there was an outstanding warrant for Graham's arrest. Additionally, the informant had personally observed that LeGrande possessed contraband within the apartment, which he kept padlocked. The probation officers determined that LeGrande was in fact on probation/parole and lived at the address stated by the informant. With this information, the probation officers contacted the police and, accompanied by them, went to inspect the premises.

When the police and the probation officers arrived at LeGrande's address, one of the occupants of the building let them in and pointed out where LeGrande lived. Upon entering the building, a second occupant, later identified as Graham, appeared. The police confirmed that a warrant was outstanding for Graham's arrest for his failure to pay court assessments. Graham pointed out to the officers LeGrande's apartment, which was padlocked. LeGrande was not home during this inspection, and Graham did not know when he would return. Nor did anyone present tell the police of any contraband in LeGrande's apartment or of LeGrande permitting anyone to enter it. Simply put, the officers found no evidence to corroborate the informant's accusation of criminal activity in LeGrande's apartment.

■ Because LeGrande's apartment was padlocked, and probation regulations did not permit a forcible entry into it, the probation officers and the police decided that the police would apply for a search warrant.[2] The affidavit in support of the

---

**2.** Although the probation officers could have waited to confront LeGrande as a probationer, the decision of the police to apply for a warrant was consistent with the Fourth Amendment's preference for the warrant process. "[T]he possession of a warrant by officers conducting an arrest or search greatly

search warrant explained the factual basis for their application:

1. That your affiants can state that they are Paul Ciber and Thomas Looney, both are sworn members of the Wilmington Police Department, Wilmington, Delaware. Both are currently assigned to the Drug, Organized Crime and Vice Division as detectives and have a combined total of over (20) years police experience and a combined total of (10) years of investigative experience. Your affiants have attended numerous schools and seminars specifically dealing with narcotics investigations including identification of controlled substances as well as investigative techniques for dealing with narcotics traffickers. Your affiants have also authored and/or coauthored over (100) one hundred search warrants.

2. That your affiants can truly state that on Janurary [sic] 13, 2005, these detectives along with Detective Sergeant Liam Sullivan were contacted by the State of Delaware Office of Probation and Parole. Probation officer Craig Watson advised that he received information from a confidential informant that a subject Thomas LeGrande residing at 1304 North Claymont Street was in possession of a 357 handgun, a sawed-off shotgun, ammunition, and marijuana inside of his apartment located on the second floor rear east side.

3. The confidential informant further advised Officer Craig Watson that he/she has first hand knowledge because he/she personally observed marijuana, a 357 handgun and ammunition while inside the apartment on January 8, 2005.

The confidential informant also is aware that Thomas LeGrande is on probation/parole and should not have possession of these items.

The confidential informant also advised that a subject he/she knows as Darryl Graham also resides in the residence on the second floor middle apartment and has warrants for his arrest.

4. These officers met with Officer Craig Watson on this date [January 14, 2005] at which time he advised that (Thomas Grande [sic] BMN D.O.B. 5–26–1950) is currently on probation/parole for murder first degree. Officer Watson further advised that Thomas Grande [sic] home address registered with State of Delaware Probation and Parole is 1304 North Claymont Street Wilmington, Delaware 19802.

5. On this date, these detectives along with probation and parole officers responded to 1304 North Claymont Street to conduct a home visit and administrative search of Thomas LeGrande's residence.

While inside the building, these detectives observed that the residence was subdivided into 4 apartments. One apartment on the first floor, and three apartments located on the second floor, with a common hallway. Upon responding to the second floor, these detectives made contact with a black male who identfied [sic] himself as (Darryl Graham D.O.B. 8–29–1960). A warrant check was conducted and revealed that this subject was currently wanted for capias failure to pay/shoplifting under $1000.00. This cooberated [sic] the information received from the confidential informant.

---

reduces the perception of unlawful or intrusive police conduct, by assuring 'the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search.' " *Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (quoting *United States v. Chadwick*, 433 U.S. 1, 9, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977)).

Darryl Graham assisted these detectives by identifying Thomas LeGrandes [sic] door to his apartment. This door being located on the second floor east side. This door is dark in color wood with a lock hasp on the outside and a padlock securing same. Darryl Graham further stated that Thomas LeGrande left early this morning on this date.

Probation and parole officers knocked on the door however there was no response. These officers fear that Thomas LeGrande will return home and learn that officers were at his residence conducting a check and dispose of the above listed evidence.

Based upon this affidavit, a Justice of the Peace issued the search warrant authorizing the search of "[t]he entire residence ... known as 1304 North Claymont Street second floor east side apartment, Wilmington DE 19801." When the warrant was executed at LeGrande's apartment, the officers found and seized two handguns, ammunition, marijuana, cocaine, cash, and drug paraphernalia.

LeGrande ultimately was arrested and charged with two counts of Possession of a Firearm During the Commission of a Felony, Possession with Intent to Deliver Cocaine, Possession with Intent to Deliver Marijuana, Maintaining a Dwelling for Keeping Controlled Substances, and Possession of Drug Paraphernalia.[3] He filed a motion to suppress for lack of probable cause, which the Superior Court denied. A jury convicted LeGrande of all charges. LeGrande filed a motion for a new trial, which was denied. Pursuant to 11 *Del. C.* § 4214(b), LeGrande was sentenced to a minimum mandatory term of life in prison without benefit of probation, parole, earned good time, or any other reduction. This appeal followed.

## II. Discussion

■ LeGrande argues that the four corners of the affidavit in support of the search warrant do not establish probable cause. Where the facts are not in dispute and only a constitutional claim of probable cause is at issue, we review the Superior Court's ruling *de novo.*[4]

■ Under the United States and Delaware Constitutions, a search warrant may be issued only upon the showing of probable cause.[5] "An affidavit in support of a search warrant must, within the four-corners of the affidavit, set forth facts adequate for a judicial officer to form a reasonable belief that an offense has been committed and the property to be seized will be found in a particular place."[6] In determining whether probable cause exists to obtain a search warrant, our courts

---

3. LeGrande was also charged with two counts of Possession of a Firearm by a Person Prohibited, but these counts were severed during his trial, and the State eventually entered a *nolle prosequi* on both of these charges.

4. *Sisson v. State,* 903 A.2d 288, 296 (Del. 2006); *Smith v. State,* 887 A.2d 470, 473 (Del.2005); *accord Booze v. State,* 2007 WL 445969, at *3 (Del.Supr.).

5. U.S. CONST. amend. IV; DEL. CONST. art. I, § 6; *Fink v. State,* 817 A.2d 781, 786 (Del. 2003) ("A search warrant may be issued only upon a showing of probable cause."); *accord Sisson,* 903 A.2d at 296 (Del.2006).

6. *Sisson,* 903 A.2d at 296. *See also Stewart v. State,* 2008 WL 482310, at *2 (Del.Supr.) ("Probable cause exists when police officers possess information which would warrant a reasonable man into believing that a crime is being or has been committed."); *Carter v. State,* 814 A.2d 443, 445 (Del.2002) ("For an arresting officer to have probable cause, the officer's knowledge must be sufficient for a prudent person to believe that an individual had committed or was committing an offense.").

apply a "totality of the circumstances" test.[7] We have explained that this test requires the court to examine factors such as the reliability of the informant, the details contained in the informant's tip and the degree to which the tip is corroborated by independent police surveillance and information.[8] If an informant's tip is sufficiently corroborated by independent police work, the tip may form the basis for probable cause even though nothing is known about the informant's credibility.[9]

 Our duty as a reviewing court "is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed."[10] As explained by the United States Supreme Court, this "after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review."[11] Thus, we pay "great deference" to the factual inferences drawn by an issuing magistrate in his probable cause determination.[12] Notwithstanding this deference, our "substantial basis" review requires us to determine whether "the warrant was invalid because the magistrate's probable-cause determination reflected an improper analysis of the totality of the circumstances...."[13]

 The State argues that the officers, to the extent possible, were able to corroborate and verify the information provided by the informant. The State reasons that this corroboration, including LeGrande's probationary status, established probable cause to believe that there was ongoing criminal activity in LeGrande's apartment.[14] We disagree.

7. *Sisson*, 903 A.2d at 296; *accord Fink*, 817 A.2d at 787; *Hubbard v. State*, 2001 WL 1089664, at *4 (Del.Supr.); *State v. Maxwell*, 624 A.2d 926, 928 (Del.1993). *See also Stewart*, 2008 WL 482310, at *2 ("The existence of probable cause is to be measured by the totality of the circumstances; factual and practical considerations of life on which reasonable men, not legal technicians, act.").

8. *Brown v. State*, 897 A.2d 748, 751 (Del. 2006); *accord Tolson v. State*, 900 A.2d 639, 643 (Del.2006); *Hubbard*, 2001 WL 1089664, at *4.

9. *Hubbard*, 2001 WL 1089664, at *4; *McAllister v. State*, 807 A.2d 1119, 1124 (Del.2002) ("An informant's tip that is corroborated by independent police work can form the basis for probable cause, regardless of what is known about the informant's personal credibility or reliability."); *see also Tatman v. State*, 494 A.2d 1249, 1251 (Del.1985) ("[U]nder [*Illinois v. Gates*, 462 U.S. 213, 242–43, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)] if the informant's tip can be corroborated, it may form the basis for probable cause even though nothing is known about the informant's credibility.").

10. *Sisson*, 903 A.2d at 296; *accord Gates*, 462 U.S. at 238–39, 103 S.Ct. 2317 ("[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]" that probable cause existed.") (citation omitted).

11. *Gates*, 462 U.S. at 236, 103 S.Ct. 2317.

12. *Jensen v. State*, 482 A.2d 105, 111 (Del. 1984) ("A determination of probable cause by the issuing magistrate will be paid great deference by a reviewing court and will not be invalidated by a hypertechnical, rather than a common sense, interpretation of the warrant affidavit.") (citations omitted); *accord Smith*, 887 A.2d at 473; *Gardner v. State*, 567 A.2d 404, 409 (Del.1989); *Blount v. State*, 511 A.2d 1030, 1034 (Del.1986).

13. *United States v. Leon*, 468 U.S. 897, 915, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) ("Even if the warrant application was supported by more than a 'bare bones' affidavit, a reviewing court may properly conclude that, notwithstanding the deference that magistrates deserve, the warrant was invalid because the magistrate's probable-cause determination reflected an improper analysis of the totality of the circumstances, or because the form of the warrant was improper in some respect.") (citing *Gates*, 462 U.S. at 238–39, 103 S.Ct. 2317).

14. The State did not address below whether LeGrande had signed an advanced consent search and we do not address any implica-

The analysis of whether there is probable cause to issue a search warrant is parallel to the legal analysis for a warrantless arrest.[15] Cases involving warrantless seizures or arrests based upon an anonymous tip are instructive. In *Jones v. State*,[16] this Court analyzed *Alabama v. White*[17] and other state cases[18] to determine whether an anonymous tip could suffice to establish reasonable and articulable suspicion for a stop.[19] We quoted from *White* that "if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum than would be required if the tip were more reliable."[20] Analyzing whether the patrolman in *Jones* held a reasonable and articulable suspicion of criminal activity prior to seizing Jones, we concluded that the corroboration of the defendant wearing the same color coat as indicated by the tip and being in a "high crime area"

at night did not satisfy the requirements of a reasonable and articulable suspicion.[21]

Shortly thereafter, the United States Supreme Court addressed whether an anonymous tip reporting a possessory crime was, by itself, sufficient to justify a stop and frisk of a person in *Florida v. J.L.*[22] Recognizing, as this Court did, that *White* was a "close case," the U.S. Supreme Court summarized *White* as follows:

> Only after police observation showed that the informant had accurately predicted the woman's movements ... did it become reasonable to think that the tipster had inside knowledge about the suspect and therefore to credit his assertion about the cocaine. Although the Court held that the suspicion in *White* became reasonable after police surveillance, we regarded the case as borderline. Knowledge about a person's future movements indicates some familiarity

tions of doing so today. *See generally Samson v. California,* 547 U.S. 843, 847, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006) (citations omitted) ("We granted certiorari to answer a variation of the question this Court left open in *United States v. Knights* [534 U.S. 112, 120 n. 6, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001)]— whether a condition of release can so diminish or eliminate a released prisoner's reasonable expectation of privacy that a suspicionless search by a law enforcement officer would not offend the Fourth Amendment. Answering that question in the affirmative today, we affirm the judgment of the California Court of Appeal."). *See also id.* at 857, 126 S.Ct. 2193 ("[W]e conclude that the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee.").

15. We have held that "the legal standard for the securing of the search warrant and the warrantless arrest are the same." *Gardner,* 567 A.2d at 409. However, "[p]robable cause to search and probable cause to arrest are not fungible legal concepts, and each involves a distinctly separate inquiry." *Dorsey v. State,* 761 A.2d 807, 812 (Del.2000). "The focus of probable cause to search is upon a 'place', i.e., whether contraband or evidence will be

found in a particular location. The focus of probable cause to arrest is upon a 'person', i.e., whether a criminal offense has been or is being committed by the person to be arrested." *Id.*

16. 745 A.2d 856 (Del.1999).

17. 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990).

18. *Arizona v. Altieri,* 191 Ariz. 1, 951 P.2d 866 (1997) (en banc); *City of Minot v. Nelson,* 462 N.W.2d 460 (N.D.1990).

19. *Jones,* 745 A.2d at 869–71. In *Jones,* we also recognized that the United States Supreme Court had granted certiorari in *Florida v. J.L.,* 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000). *Jones,* 745 A.2d at 869 n. 65.

20. *Id.* at 871 (quoting *White,* 496 U.S. at 330, 110 S.Ct. 2412).

21. *Id.*

22. 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000).

with that person's affairs, but having such knowledge does not necessarily imply that the informant knows, in particular, whether that person is carrying hidden contraband.[23]

The tip in *J.L.* provided "no predictive information and therefore left the police without means to test the informant's knowledge or credibility."[24] Further, "[t]he reasonableness of official suspicion must be measured by what the officers knew before they conducted their search."[25] The Court concluded:

> An accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. *The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person.*[26]

This Court applied *J.L.* in *Flonnory v. State.*[27] In *Flonnory,* the police received an anonymous tip that an occupant was "scrunched low" in a parked vehicle and possessed an "illegal substance."[28] Police arrived and found the car and defendant as described by the caller, and after seizing the defendant and conducting a *Terry*[29] search of the car, found illegal drugs. We recognized that "the single confirmation of readily observable facts does not enhance the reliability of an anonymous tip to the level required for a finding of reasonable suspicion."[30] In reaffirming that "an illegal stop cannot be justified by circumstances that arise following its initiation,"[31] we reversed the denial of the motion to suppress "[b]ecause the anonymous tip lacked an indicia of reliability and was unsupported by independent police corroboration."[32] In doing so, we held:

> To determine whether a reasonable suspicion exists, we must examine the totality of the circumstances surrounding the situation as viewed through the eyes of a reasonable, trained police officer in the same or similar circumstances, combining objective facts with such an officer's subjective interpretation of those facts.[33]

Since *Flonnory,* this Court has analyzed an anonymous tip regarding criminal activity in one other case, *Harris v. State.*[34] In *Harris,* the police received an anonymous

---

**23.** *Id.* at 270–71, 120 S.Ct. 1375 (citations omitted).

**24.** *Id.* at 271, 120 S.Ct. 1375.

**25.** *Id.*

**26.** *Id.* at 272, 120 S.Ct. 1375 (emphasis added).

**27.** 805 A.2d 854 (Del.2001).

**28.** *Id.* at 856. The tip provided the color, location, and license tag number of the vehicle. *Id.*

**29.** *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

**30.** *Flonnory,* 805 A.2d at 858.

**31.** *Id.* at 859 (quoting *Woody v. State,* 765 A.2d 1257, 1263 (Del.2001)).

**32.** *Id.*

**33.** *Id.* at 858 (quoting *Woody,* 765 A.2d at 1263) (internal quotation marks omitted). *See generally United States v. Roberson,* 90 F.3d 75, 80–81 (3d Cir.1996) (providing an explanation of the intrusion upon Fourth Amendment liberties "an anonymous prankster, rival, or misinformed individual" could work with a "fleshless anonymous tip" that provides "only readily observable information" when the police "observe no suspicious behavior").

**34.** 2005 WL 2219212 (Del.Supr.). This Court has also analyzed the reliability of anonymous tips about erratic driving, and held that those tips are generally more reliable than ones reporting concealed possessory crimes because the illegality is open to public observation. *See Bloomingdale v. State,* 842 A.2d 1212 (Del.2004).

tip about a shooting at a residence in Wilmington.[35] The informant also told the police that someone in a red Suzuki was involved in the shooting and also with drugs. When the police arrived at the scene the police saw bullet holes in the walls as well as cartridges and live rounds on the floor. The defendant was also outside the residence in a red Suzuki. We found that the totality of the circumstances supported "the presence of reasonable and articulable suspicion required for the police to detain Harris...."[36] We also found that because the crime had already been verified as having occurred, the officers had an independent reasonable and articulable suspicion to detain Harris outside of his car for questioning and conduct a *Terry* search for weapons.[37]

In this case, the police only corroborated the accused's identity, the location of his locked apartment, his probationary status, and that his neighbor was wanted. Confirmations of these facts, which could be used to identify LeGrande, "[did] not show that the tipster [had] knowledge of concealed criminal activity."[38] Since there was no corroboration by independent police work of the anonymous tipster's assertion of illegality[39] (or even confirmation that LeGrande had allowed others into his apartment), the totality of the circumstances did not provide the issuing magistrate a substantial basis for concluding there was probable cause that evidence or contraband would be found on the premises.[40] Therefore, we hold that the search violated LeGrande's probable cause rights under the Fourth Amendment of the United States Constitution. Accordingly, the Superior Court erred in denying LeGrande's motion to suppress.[41]

### III. Conclusion

The judgment of the Superior Court is **REVERSED** and this matter is **REMANDED** for further proceedings consistent with this Opinion.[42]

35. *Harris*, 2005 WL 2219212, at * 1.

36. *Id.* at *2.

37. *Id.*

38. *Florida v. J.L.*, 529 U.S. 266, 272, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000).

39. *Id.*

40. *Cf., e.g., United States v. Ritter*, 416 F.3d 256 (3d Cir.2005) (finding that the officer's personal knowledge of similar previous criminal activity on the same premises was sufficiently corroborative so as to give the anonymous tip at issue predictive value).

41. Because we reverse on this issue, we need not address the remaining arguments LeGrande has raised in this appeal.

42. We do not address in this Opinion, nor have the parties argued, the admissibility of the evidence seized in any violation of probation/parole proceeding involving LeGrande. In *Bruton v. State*, 2001 WL 760842 (Del. Supr.), we acknowledged that "[t]he United States Supreme Court has declined to extend the exclusionary rule to proceedings other than criminal trials." *Id.* at *1; *see Pa. Bd. of Probation & Parole v. Scott*, 524 U.S. 357, 364, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998) ("Application of the exclusionary rule would both hinder the functioning of state parole systems and alter the traditionally flexible, administrative nature of parole revocation proceedings.... We therefore hold that the federal exclusionary rule does not bar the introduction at parole revocation hearings of evidence seized in violation of parolees' Fourth Amendment rights."). At least one Superior Court case has found that the exclusionary rule would not apply in the event of a violation of a probation proceeding. *See State v. Kinard*, 2005 WL 2373701, at *3 (Del.Super.); *see also* Phillip E. Hassman, Annotation, *Admissibility, in State Probation Revocation Proceedings, of Evidence Obtained Through Illegal Search and Seizure*, 77 A.L.R.3d 636 (1977) (citing cases and noting a split in authority). This Court has not yet addressed that issue. *See Fuller v. State*, 844

A.2d 290, 293 (Del.2004) ("[W]e do not reach the State's argument that the exclusionary rule does not apply to probation revocation proceedings.").