# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE, )
)
)
)
v. ) I.D. No. 1702004090; 1705016514;
) 1701016650
)
THERION REESE, )
)
Defendant. )
)

Date Submitted: January 15, 2019
Date Decided: March 18, 2019

## OPINION

*Upon Consideration of*
*Defendant's Motion to Suppress:* **GRANTED**

Daniel B. McBride, Esquire, Deputy Attorney General, Department of Justice, State of Delaware, 820 North French Street, 7th Floor, Wilmington, Delaware, Attorney for the State.

Kevin P. Tray, Esquire, Law Office of Kevin P. Tray, 1215 North King Street, Wilmington, Delaware, Attorney for the Defendant.

**JURDEN, PJ.**

## I. INTRODUCTION

On February 6, 2017, the Wilmington Police Department (the "WPD") arrested Therion Reese. A magistrate issued a search warrant for the cellular phone found on Reese's person when arrested. Before the Court is Reese's Motion to Suppress evidence discovered during a search of the cellular phone.

## II. FACTS

When WPD arrested Reese on February 6, 2017, WPD seized a cellular phone found on his person.[1] On February 15, 2017, Detective Robert Fox ("Det. Fox") sought and was granted a search warrant of Reese's cellular phone. Det. Fox sought the search warrant as part of the investigation of the January 20, 2017 Kaden Young homicide and Shyjuan Dickerson shooting.

In connection with the investigation of "Murder 1st Degree and related offenses," the search warrant authorized the search and seizure of:

> [A]ny/all data stored by whatever means, or through normal course of business of an unknown wireless service, and/or through the forensic examination of said cellular telephone, to include but not limited to registry entries, pictures, photographs, images, audio/visual recordings, multi-media messages, web browsing activities, electronic documents, location information, text messaging, writings, user names, subscriber identifiers, buddy names, screen names, calendar information, call logs, electronic mail, telephone numbers, any similar information/data indicia of communication, and any other information/data pertinent to this investigation within said scope.[2]

---

[1] The cellular phone searched was a black ZTE model N9131. Mot. to Suppress at 1.
[2] Mot. to Suppress, Ex. A.

The affidavit of probable cause sets forth the following facts.[3] On January 20, 2017, Kaden Young was shot and killed and Shyjuan Dickerson was shot in the 1200 block of Elm Street Wilmington, Delaware.[4] Around 1521 hours, WPD received several calls that shots were fired in the 1200 block of Elm Street. The responding officers found Young, who was unresponsive. The officers administered medical aid to Young until medical personnel arrived. Young was then transported to Christiana Hospital where he was pronounced dead. Dickerson fled the scene, flagged down an ambulance, was taken to Saint Francis Hospital for treatment and later released.

Various witnesses stated that leading up to the shooting a man identified as "Chume" exited a corner store and called over two or three other men. At this time, Young approached the group and had a verbal altercation with Chume. Chume then told one of the men to "blow him" and one of the men with Chume began to shoot. A witness stated that a group of black males dressed in knitted hats, black jackets and light colored pants might have been standing around someone on the ground but the witness was unsure because their view was obstructed. After hearing gunshots, several men were observed leaving the scene in a "gold 4dr vehicle."

---

[3] Mot. to Suppress, Ex. A.
[4] Det. Fox was assigned the investigation. Mot. to Suppress, Ex. A.

3

Surveillance footage from the corner store and other locations supports the witnesses' statements. The corner store footage shows three black males matching the description provided by a witness. Two of the men were identified as Reese and Joquan White. The men exited the corner store at approximately 1518 hours. The footage shows the victim walking down the street at 1519 hours and then the shooting began at 1520 and 58 seconds. After the shooting, a tan four door car "with distinct damage to the passenger rear quarter panel and front bumper" fled the scene.

An incident inquiry of Reese revealed three reported incidents. A report for an October 2, 2016 incident stated that Reese was observed operating a tan 2005 Kia Spectra registered to Sade Ferguson. A second report from December 15, 2016 revealed a domestic incident between Reese and Ferguson. A third report from December 28, 2016 stated that Detective Charles Pruitt investigated an unrelated incident between Ferguson and Reese, where Ferguson's tan car was observed fleeing the scene of a shooting with the suspected shooter inside.

On February 6, 2017, Reese was arrested for an unrelated incident. Ferguson and White were also taken into custody. Police found a cellular phone on each of

them. When arrested, Reese was wearing a black bubble type coat.[5] White was arrested wearing a black North Face jacket and had a backpack filled with clothes.[6]

While in police custody, Ferguson stated that Reese goes by the name "Pume." Ferguson stated that she was incarcerated from January 13, 2017 to January 27, 2017 and during that time Reese had possession of her car, a tan sedan. Ferguson knew Reese possessed her car because when she was incarcerated Reese and his mother retrieved Ferguson's personal effects, including her car keys and cellular phone. After viewing a surveillance still image of the car fleeing the January 20, 2017 shooting, Ferguson identified the car as her tan sedan based on the distinctive damage.

Ferguson stated that she knew Young and she previously had a relationship with his cousin, who is incarcerated. According to Ferguson, Reese and Young's cousin had ongoing issues that started in the summer of 2016. While Ferguson was incarcerated, Young's cousin reached out to her without knowing she was incarcerated and that Reese had her cellular phone. Reese answered Ferguson's cellular phone and got into an argument with Young's cousin. Ferguson stated that before Reese and Young's cousin argument Reese and Young had a "back and forth

---

[5] Video surveillance showed Reese wearing a black bubble type coat on the day of the January 20, 2017 homicide.
[6] The January 20, 2017 surveillance footage showed White wearing a similar black jacket.

. . . over social media [about Young's cousin]." On approximately January 15, 2017, Ferguson called Reese and they had an argument. During the argument, Reese told Ferguson "he was going to take care of [Young's cousin] when he gets out of jail." Ferguson called Reese again on January 20, 2017—the day of the shooting. During this conversation, Reese told Ferguson that Young was shot and then Reese laughed and told her that he did not shoot Young but he had his "young boy do it." Then on either January 22nd or 23rd Ferguson called one of her children's godmothers and was informed that Reese had totaled her car and left it in a McDonald's parking lot in Philadelphia. Ferguson was told that White accompanied Reese when he left the car. Based on Ferguson's statement, WPD located and seized her car.

When questioned, White initially told the police that he was not in the area of the shooting and did not know Reese. After being shown surveillance footage of the January 20, 2017 shooting, White stated he was at the shooting and heard gunshots but did not see anything and ran away. Surveillance footage determined that White lied when he said that he walked to the area of the shooting and then ran away.

When questioned, Reese denied being present at the shooting and invoked his right to remain silent.

In paragraph twelve, the affidavit of probable cause states:

Your affiant can truly state through training, knowledge, and experience that persons involved in criminal acts will utilize Mobile Electronic Devices such as cellular telephones to further facilitate their

6

criminal acts and/or communicate (whether texting or calling) with co-conspirators. Mobile Electronic Devices are similar to computers in that they can process, store, and retrieve electronic data. Mobile Electronic Devices, such as cellular telephones and electronic organizers, are capable of processing, storing, and retrieving a large amount of data. A trained professional in the area of computer forensics can retrieve this data in either a logical and physical manner. In addition, depending on the particular device, data that has been deleted, purged naturally, or physically can often be recovered. Moreover, businesses associated with mobile electronic devices, including individual carriers of cellular services, maintain as business records a variety of digital data associated with individual cellular telephones.[7]

### III. PARTIES' CONTENTIONS

Reese contends that the WPD violated his constitutional rights by searching the cellular phone because the search warrant failed to establish a nexus between the crimes investigated and the cellular phone searched, and the search warrant was unconstitutionally overbroad and insufficiently particular. Reese argues that the instant search warrant is similar to the search warrant found unconstitutional in *Buckham v. State*.[8]

The State contends that a nexus was established between the crimes investigated and the cellular phone searched. The State argues that the search

---

[7] Mot. to Suppress, Ex. A. The paragraph then describes the types of data a cellular phone can store.

[8] *Buckham v. State*, 185 A.3d 1 (Del. 2018).

7

warrant is similar to the search warrants upheld in *State v. Anderson*[9] and *State v. Taylor*[10] and not the insufficient *Buckham* search warrant.

## IV. STANDARD OF REVIEW

For a motion to suppress, the defendant bears the burden of proof to show that the search warrant was unlawful.[11] The defendant must prove by a preponderance of the evidence that the search and/or seizure violated their rights under the United States Constitution, the Delaware Constitution, or Delaware Statutes.[12]

In order to issue a valid search warrant that meets the standards set forth in the Fourth Amendment to the United States Constitution and Article I, Section 6 of the Delaware Constitution and not violate the defendant's right requires a showing of probable cause in support of a search warrant.[13] The "four corners" test determines whether an warrant application/affidavit establishes probable cause solely through the facts set forth on its face.[14] Those facts must be adequate enough for the issuing magistrate to form a reasonable inference or logical nexus "that an offense has been committed and the property to be seized will be found in a particular

---

[9] *State v. Anderson*, 2018 WL 6177176 (Del. Super. 2018) (ORDER).
[10] *State v. Taylor*, ID No. 1605012921A (Del. Super. Feb. 16, 2018) (Medinilla J.) (TRANSCRIPT).
[11] *State v. Westcott*, 2017 WL 283390, at *1 (Del. Super. 2017).
[12] *Id.*
[13] Pursuant to 11 *Del. C.* § 2306, to obtain a search warrant, the police must make a specific and delineated request supported by probable cause.
[14] *Pierson v. State*, 338 A.2d 571, 573 (Del. 1975); *Sisson v. State*, 903 A.2d 288, 296 (Del. 2006); *State v. Westcott*, 2017 WL 283390, at *2 (Del. Super. 2017).

8

place."[15] Therefore, to establish probable cause, the facts in the affidavit, standing alone, must create a reasonable inference or logical nexus between "the items being sought and the place to be searched."[16]

With respect to a motion to suppress, the Court shall determine whether there was a substantial basis to conclude probable cause existed and that the issuing magistrate's determination was based on the totality of the circumstances.[17] When reviewing the validity of a search warrant, the Court gives "great deference" to the issuing magistrate's determination that probable cause supported the warrant.[18] To determine the sufficiency of a search warrant, the Court, like the issuing magistrate, is limited to information contained within the "four-corners" of the affidavit of probable cause.[19] The Court must also consider the totality of the circumstances based on the four corners of the affidavit because the issuing magistrate may draw "reasonable inferences from the factual allegations in the affidavit."[20]

## V. DISCUSSION

Nexus Between Search Warrant and Probable Cause

---

[15] *Westcott*, 2017 WL 283390, at *2 (citing *LeGrande v. State*, 947 A.2d 1103, 1107 (Del. 2008)).
[16] *Id.*
[17] *Buckham v. State*, 185 A.3d 1, 16 (Del. 2018).
[18] *Id.*
[19] *Anderson v. State*, 2018 WL 6177176, at *2 (Del. Super. 2018) (ORDER) (citing *LeGrande v. State*, 947 A.2d 1103, 1107 (Del. 2008)).
[20] *See Westcott*, 2017 WL 283390, at *2; *see also LeGrande*, 947 A.2d at 1107-08.

Reese argues that the instant cellular phone search warrant fails to establish a logical nexus because it asserts the same generalized suspicion that failed to support a finding of probable cause in *Buckham v. State*.[21] Reese asserts that the only mention of a cellular phone in the warrant is his use of Ferguson's phone. Reese further contends that "Paragraph 12 is based on speculation in an attempt to support a fishing expedition of the cell phone by prefacing the officer's generalized conjecture . . . without any individualized information" connecting Reese or his phone to the officer's assertions.[22]

The State argues that the instant search warrant is distinguishable from *Buckham* because the *Buckham* search warrant was "vaguely linked" while the instant search warrant "outlines specific conversations a witness had with [Reese] during which he confessed to the homicide of Kaden Young and threatened 'to take care of' Young's cousin when he was released from prison."[23] The State further contends that evidence of "contact information, call logs and messages" corroborate Ferguson and Reese's conversations, during which Reese confessed to murder.[24] The State further argues that the warrant established that the murder involved at least one co-conspirator. To support this argument, the State contends that White was

[21] Mot. to Suppress at 5 (citing *Buckham v. State*, 185 A.3d 1 (Del. 2018)).
[22] *Id.* at 6.
[23] State's Response to Mot. to Suppress at 1.
[24] *Id.*

identified as present at the scene of the murder and accompanied Reese when Reese abandoned the getaway car. When White was detained for questioning, the police seized a cellular phone found on his person. The State asserts that the cellular phones contain circumstantial evidence that Reese and White know each other and "may have potentially been in contact via cellular device at the time of the crime." This evidence, therefore, would link Reese to White and the murder.[25]

In *Buckham*, the Delaware Supreme Court held the "four corners of the affidavit" did not establish probable cause to search the entire cellular phone.[26] The facts plead in the affidavit, with respect to searching Buckham's cellular phone were: (1) "criminals often communicate through cellular phones;" (2) the driver of the getaway car's girlfriend "contacted Buckham's girlfriend via cell phone" prior to speaking to police; (3) Buckham posted on social media "about getting arrested while he was at-large;" (4) Buckham's location was unknown for six weeks; (5) a cellular phone was seized during his arrest; (7) the gun from the shooting was never recovered; and (8) "GPS and wireless network data . . . can be used to determine the locations used by the criminal while engaged in the criminal activity or in the flight there from."[27] The Supreme Court determined that "in this day and age" everyone

---

[25] *Id.* at 2.
[26] *Buckham*, 185 A.3d at 16-18 (affidavit constitutes warrant application).
[27] Appendix to Opening Brief at A33-34, Buckham v. State, 185 A.3d 1 (Del. 2018) (No. 538, 2016), E-File 60427025 [hereinafter *Buckham* Appendix].

communicates with their cellular phones, there was "no basis at all to suspect that Buckham's cell phone was likely to contain evidence," and that his social media posts showed a nexus with the arrest warrant and not the underlying crime.[28] The Supreme Court noted that, even though the Superior Court "expressed skepticism both about [the affidavit's] generalized allegations and about the inferences that could be drawn from Buckham's social media activity," it found a logical nexus between the GPS data and the crime.[29] The Supreme Court held that there might be a nexus between the GPS data and the crime, but the probable cause did not extend to the rest of the cellular phone.[30] According to the Supreme Court in *Buckham*, "the scope of the warrant so far outruns that probable cause finding–and is so lacking in particularity relative to that probable cause finding–that it qualifies as plain error."[31] The generalized suspicions that Buckham had a cellular phone, made social media posts about the arrest warrant, that his girlfriend and the getaway driver's girlfriend communicated via cellular phones, and criminals communicate via cellular phone did not constitute a nexus to support a probable cause finding between the cellular phone and the crime. Therefore, while there was an inferential connection between the GPS and the crime, the scope of the warrant exceeded the probable cause and the

---

[28] *Buckham*, 185 A.3d at 17.
[29] *Id.* at 17.
[30] *Id.* at 17-18.
[31] *Id.* at 18.

12

generalized suspicions did not provide a substantial basis to support a probable cause finding. Thus, the search warrant was invalid.

*Buckham* is instructive on this issue. Like *Buckham*, (1) the instant search warrant far exceeds the logical nexus established by probable cause, (2) while an inferential connection exists between the social media account and the crime, the warrant far exceeds the probable cause finding, and (3) the instant search warrant is supported by allegations that are "too vague and too general to connect [Reese's] cell phone to the shooting."[32] Here, like in *Buckham*, the warrant is "plainly mismatched to the probable cause" so that "the scope of the warrant so far outruns that probable cause finding."[33]

Search Warrant Breadth and Particularity

Reese cites to *Buckham* in support of his argument that, in addition to lacking a logical nexus, the search warrant is overbroad and insufficiently particular. In opposition, the State argues that the instant search warrant is distinguishable from *Buckham* and similar to the search warrants in *State v. Anderson*[34] and *State v. Taylor*.[35]

---

[32] *See Buckham*, 185 A.3d at 17.
[33] *See id.* at 18.
[34] *State v. Anderson*, 2018 WL 6177176 (Del. Super. 2018) (ORDER).
[35] *State v. Taylor*, ID No. 1605012921A (Del. Super. Feb. 16, 2018) (Medinilla J.) (TRANSCRIPT). The State further contends that the language in the search warrant listing the data categories is similar to those in *Starkey v. State*, 2013 WL 4858988 (Del. 2013) and *Fink v. State*, 817 A.2d 781 (Del. 2003). The Court finds this unpersuasive because both cases pre-date

13

With respect to search warrants for cellular devices, the Delaware Supreme Court has held that a warrant cannot be broader than the probable cause it is based upon and it must describe the items with as much particularity as the circumstances reasonably allow.[36] In *Wheeler v. State*, the Supreme Court held that every search warrant must describe both the items to be searched "with sufficient particularity" and only be as broad as the probable cause "on which it is based."[37] In *Buckham v. State*, the Supreme Court applied the *Wheeler* standard to cellular phones and held that the Superior Court erred by admitting evidence discovered under the authorization of a cellular phone search warrant that failed to state with particularity the information sought and authorized the search of information for which no

---

*Wheeler v. State*, 135 A.3d 282, 302 (Del. 2016) and *Buckham* and thus did not consider the heightened standard for cellular phone search warrants. The Supreme Court in *Wheeler*, noted that in *Fink*, the warrant did not exceed its scope but the Court in *Fink* "did not more directly address the permissible scope of warrants seeking digital information." *Wheeler*, 135 A.3d at 302. In a footnote, the Supreme Court in *Wheeler*, noted that in *Starkey*, the issue was whether the search warrants were overbroad, ambiguous and failed to establish relevance between the cellular phone and the crimes. *Id.* at n.100. In *Starkey*, the affidavit established that the defendant was arrested in possession of the stolen phone, and that he called a witness from his phone, thus establishing a nexus between the phone and the crime. In *Starkey*, the Court held that warrants were not vague because the warrants were limited to "certain types of data, media, and files" relevant to the investigation and thus prevented a boundless search. *Id.* In *Starkey* and *Fink*, a nexus existed and the search warrants where limited in scope. Here, the nexus is minimal and the search warrant authorizes a broad search including data that is not supported by the probable cause finding.

[36] *Buckham*, 185 A.3d at 18-19 (citing *Wheeler v. State*, 135 A.3d 282 (Del. 2016)). In *Wheeler*, the Supreme Court noted that meeting the particularity requirement is difficult for electronic devices because of the "commingling of relevant and irrelevant information and the complexities of segregating responsive files," and balancing the "propensity of criminals to disguise files . . . against the competing interest of avoiding unrestrained general searches." *Wheeler*, 135 A.3d at 300-01. Thus, in some cases the search of an entire electronic device might be necessary. *See id.* at 301.

[37] *Wheeler v. State*, 135 A.3d 282, 299 (Del. 2016).

14

probable cause existed.[38] In both *Buckham* and *Wheeler*, the Supreme Court held cellular phones require sensitivity when issuing a search warrant because of the potential for privacy violations that unconstrained searches pose.[39] Search warrants of cellular phones are to be as limited as possible and prevent "exploratory rummaging in a person's belongings."[40] In *Bradley v. State*, the Supreme Court recently clarified that the heightened standard for probable cause for a cellular phone search warrant requires the search warrant to state with particularity "the exact places on the phone police wished to search," and that this standard did not apply to search warrants for physical locations.[41]

In *Buckham*, the Supreme Court held that the search warrant was invalid as a top-to-bottom search authorization. The Court determined that the search was both "vague about the information sought" and "expressly authorized the search of materials there was not probable cause to search . . . ."[42] After evading arrest for six

---

[38] *Buckham*, 185 A.3d at 19.

[39] *Id.* at 18 (citing *Wheeler*, 135 A.3d at 298).

[40] "Modern smartphones store an unprecedented volume of private information, and a top-to-bottom search can permit the government access to far more than the most exhaustive search of a house." *Id.* at 18.

[41] *Bradley v. State*, 2019 WL 446548, at *6 (Del. 2019) (citing *Buckham*, 185 A.3d at 18-19). In *Bradley*, the Supreme Court held that a search warrant of a cellular phone required a heightened showing of particularity compared to search warrants of physical locations because a top-to-bottom search of a smartphone grants the government far more access than the most exhaustive search of a house. *Id.*

[42] *Buckham*, 185 A.3d at 19. The Court noted that law enforcement could have been more precise about the information sought because they possessed more particularized information. *See id.*

15

weeks, Buckham was arrested in New Jersey on charges of Attempted Murder First Degree and related offenses. During the investigation, police never found the firearm used in the shooting. They sought a search warrant of Buckham's cellular phone for its GPS data to determine where he was while evading arrest so that they might find the location of the missing firearm. In connection to the investigation of Attempted Murder First Degree, the search warrant authorized police to search Buckham's cellular phone for:

> Any and all stored data contained within the internal memory of the cellular phones, including but not limited to, incoming/outgoing calls, missed calls, contact history, images, photographs and SMS (text) messages.[43]

The Superior Court concluded that the affidavit established probable cause to search Buckham's cellular phone for GPS data to determine where he was prior to his arrest. The Supreme Court, however, noted that the search warrant did not limit the search of Buckham's cellular phone to a relevant time period and authorized law enforcement to search any data on his phone. "Worse still, it authorized law enforcement to search categories of data that had nothing to do with GPS locations, like 'incoming/outgoing calls, missed calls, contact history, images, photographs and SMS (text) messages.'"[44] The Supreme Court found the affidavit statement

---

[43] *Buckham* Appendix at A31.
[44] *Buckham*, 185 A.3d at 15. Thus, the trial court concluded that probable cause existed to search Buckham's cellular phone for GPS data but the Delaware Supreme Court found no probable cause

16

"criminals often communicate through cellular phones" particularly unpersuasive because in this day and age everyone communicates using cellular phones.[45] The Supreme Court was also unpersuaded by the affidavit statement "the owner of the vehicle that was used in the shooting contacted Buckham's girlfriend via cell phone prior to talking to the police."[46]

In *Anderson*, the Superior Court distinguished the search warrant from the *Buckham* search warrant and held that a search warrant for seven cellular phones seized during Anderson's arrest for racketeering and drug dealing was valid, but suppressed evidence outside of the established time period.[47] The Court in *Anderson* held that *Buckham* did not apply because: (1) the amount of cellular phones seized; (2) a temporal limitation was established; and (3) Anderson was indicted for Racketeering, an ongoing offense.[48] The search warrant in *Anderson* authorized a search of:

> any and all store[d] data contained within the internal memory of the cellular phones, including but not limited to, incoming/outgoing calls, missed calls, contact history, images, photographs and SMS (text) messages.[49]

---

existed to search the other contents of his cellular phone. Therefore, the Facebook messages discovered on Buckham's phone was an item searched outside the breadth of the probable cause.
[45] *Id.*
[46] *Buckham* Appendix at A33.
[47] *Anderson v. State*, 2018 WL 6177176, at *2-3, *5 (Del. Super. 2018).
[48] *Id.* at *3-4.
[49] State's Resp. to Mot. to Suppress, Ex. C (*Anderson* search warrant).

The Court found the following facts from the affidavit supported the search warrant: (1) a specific time period (temporal limitation); (2) Anderson and another suspect, Dwayne White, were seen leaving an apartment suspected of being used for drug dealing; (3) another suspected gang member was arrested in possession of "13,000 bags of heroin;" (4) over several years law enforcement received information from past proven and reliable informants that Anderson and Dwayne White worked with other gang members to deal drugs; (5) the investigation revealed that Dwayne White and other gang members would gamble at casinos to launder drug money; (6) on August 26, 2017, Dwayne White contacted Anderson *via cellphone* to make a large bet on a sporting event in Las Vegas; and (7) when Anderson was arrested police found seven cellular phones, including the phone used to contact Dwayne White.[50]

In a pre-*Buckham* decision, the Superior Court in *Taylor v. State* held that a search warrant was partially valid because it expressly limited the search to certain types of data and media that were relevant to a homicide investigation. The Superior Court found the following probable cause supported the search warrant: (1) two incidents were identified creating a specific time period; (2) gang rivalry motive was noted; (3) the cellular phones were found on the defendants; (4) the officer provided reasons for why the evidence would be on the cellular phones; and (5) an inference

---

[50] *Anderson*, 2018 WL 6177176, at *2-3.

was drawn from a co-defendant's interview that Taylor was communicating with other gang members on the searched cellular phone.[51] In *Taylor*, the search warrant authorized police to search for:

> any/all data stored by whatever means, or through normal course of business of wireless services, and/or through forensic examination of said cellular telephone, to include but not limited to registry entries, pictures, photographs, images, audio/visual recordings, multi-media messages, web browsing activities, electronic documents, location information, text messaging, writings, user names, subscriber identifiers, buddy names, screen names, calendar information, call logs, electronic mail, telephone numbers, any similar information/data indicia of communication, and any other information/data pertinent to this investigation within said scope.[52]

The Court finds that the facts here are similar to *Buckham* and distinguishable from *Anderson* and *Taylor*. Therefore, *Buckham* controls this case and the search warrant for Reese's cellular phone is overbroad and insufficiently particular. The Superior Court's decision in *Taylor* pre-dates the Supreme Court's decision in *Buckham*. *Anderson* involved Racketeering and seven cellular phones. Unlike the affidavit in *Anderson*, the instant affidavit does not mention the use of a cellular phone in connection with the crime. Here, no facts are asserted that Reese communicated with alleged criminals via cellular phones or that cellular phones were used as part of a criminal scheme. Finally, the search warrant authorization in

---

[51] *State v. Taylor*, ID No. 1605012921A, at 80 (Del. Super. Feb. 16, 2018) (Medinilla J.) (TRANSCRIPT).

[52] State's Resp. to Mot. to Suppress, Ex. B (*Taylor* search warrant).

19

*Anderson*, where there was a nexus between the cellular phones and the crimes, has a more precise search authorization. The instant search warrant is a top-to-bottom search warrant and far exceeds the probable cause supporting the search warrant. There is probable cause to establish: that Reese used Ferguson's car on several occasions as a getaway car, that he was present for the January 20, 2017 shooting, Reese and White know each other and abandoned Ferguson's car, and Reese did not like Young or Young's cousin and they communicated via social media and Ferguson's cellular phone.[53] The probable cause, however, does not extend to Reese's cellular phone.[54]

---

[53] *See supra* pp. 3-6.

[54] The State urges the Court to restrict the evidence, not suppress all evidence "if the Court were to find that the warrant lacked specificity as to the scope of the cellular phone." State's Resp. to Mot. to Suppress at 2. The Court declines to do so for two reasons. First, *Anderson* and *Taylor* are factually distinguishable. Second, the Court is not aware of, and the State did not present, any Delaware Supreme Court case law allowing the limited remedy of quasi-suppression. Here, the affidavit, as crafted, does not match the search warrant authorization and the warrant was overbroad and insufficiently particular.

## VI. CONCLUSION

Based on the totality of the circumstances, the search warrant for Reese's cellular phone fails to establish a sufficient nexus between the crimes investigated and the cellular phone. Thus, the cellular phone search violated the Fourth Amendment of the United States Constitution, and Article I, Section 6 of the Delaware Constitution. Consequently, Defendant's Motion to Suppress is **GRANTED.**

**IT IS SO ORDERED.**

Jan R. Jurden, President Judge

**CC: Prothonotary**