**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | ID No. 1901005878 and 1901005207 |
| v. | ) | |
| | ) | In and for Kent County |
| | ) | |
| DUSTIN BELL, | ) | |
| Defendant. | ) | |

**ORDER**

Submitted: August 26, 2018
Decided: August 28, 2018

*Upon Defendant's Motion to suppress*
**GRANTED**

On this the 28th day of August, 2019, having considered the Motion to Suppress of Defendant Dustin Bell (hereinafter "Defendant") and the State's response, as well as the arguments of the parties presented at the hearing held on August 26, 2019, the Court finds that the search warrant affidavit does not establish probable cause to obtain a sample of Defendant's DNA, and the motion to suppress is **GRANTED**.

## I. Factual Background

The allegations of the affidavit of probable cause attached to the search warrant (hereinafter the "Affidavit") are, in summary, as follows:

On January 10, 2019, Detective Brian Beck of the Delaware State Police (hereinafter "Affiant"), along with officers from Troop 3 and members of the

Delaware State Police Special Operations Unit, executed a search warrant on a residence located at 212 Wheat Drive in Marydel, Delaware (hereinafter the "Residence"). The Residence was allegedly occupied by Defendant as well as other individuals, namely Lindsey Harris, Justin Sarria, and Richard Harris.

During a search of the Residence, numerous firearms, illegal narcotics, and drug paraphernalia were recovered. In the room known to be occupied by both Lindsey Harris and Defendant, officers located one High Point 9mm pistol, two baggies containing approximately 11.33 grams of meth, one baggie containing approximately 1.65 grams of marijuana, and one baggie containing 1.5 pills of Methylphenidate. Additional firearms, illegal narcotics, and drug paraphernalia were seized from the rooms known to be occupied by Mr. Sarria and by Richard Harris.

Based upon the evidence recovered, Affiant applied for a search warrant to take a buccal swab from the inside of Defendant's cheek for a DNA sample. The Affidavit states that "the sample will be used to compare any DNA evidence that is collected off of any of the firearms and drug paraphernalia seized not only from the known room of Target Subject [Defendant], but also from the other rooms of the residence." Defendant challenges the issuance of this search warrant, arguing that the four corners of the search warrant affidavit do not establish probable cause to obtain his DNA.

## II.  Legal Standard

On a motion to suppress challenging the validity of a search warrant, the defendant bears the burden of establishing that the challenged search or seizure was unlawful.[1]  A search warrant may not issue unless there is a showing of a factual

---

[1] *State v. Sisson*, 883 A.2d 868, 875 (Del. Super. 2005), *aff'd*, 903 A.2d 288 (Del. 2006).

basis for probable cause within the "four corners" of the affidavit that was submitted to the magistrate in the officer's application for the warrant.[2]

When considering the affidavit, the magistrate is to make a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."[3] In other words, a logical nexus must be established between the items being sought and the place that law enforcement wishes to search.[4]

A magistrate's determination of probable cause "should be paid great deference by reviewing courts" and should not "take the form of a *de novo* review."[5] In determining whether probable cause exists to obtain a search warrant, Delaware courts apply a "totality of the circumstances" test.[6] In considering "whether the warrant application presented the issuing magistrate with a 'substantial basis' to conclude that probable cause existed," this Court "eschews 'a hypertechnical approach to the evaluation of the search warrant affidavit in favor of a common-sense interpretation.'"[7]

### III. Discussion

Defendant's main contention for the suppression of his seized DNA evidence is that absent law enforcement recovery of a comparison sample of DNA, a DNA swab search warrant is unsupported by probable cause. The Affidavit states that the

---

[2] *Pierson v. State,* 338 A.2d 571, 573 (Del. 1975).
[3] *Illinois v. Gates,* 462 U.S. 213, 238–39 (1983); *see also Aguilar v. Texas,* 378 U.S. 108, 114 (1964).
[4] *Hooks v. State,* 416 A.2d 189, 203 (Del. 1980).
[5] *Gates,* 462 U.S. at 238–39.
[6] *LeGrande v. State,* 947 A.2d 1103, 1107-08 (Del. 2008).
[7] *Id.* at *3 (quoting *Gardner v. State,* 567 A.2d 404, 409 (Del.1989)).

sample of Defendant's DNA obtained through the buccal swab "will be used to compare any DNA evidence that *is* collected" (emphasis supplied), thus confirming that no such DNA evidence had been collected at the time of the application.

Defendant argues that pursuant to *State v. Campbell*,[8] the unsupported belief of Affiant that DNA evidence *may* be recovered from an object fails to establish the necessary nexus between Defendant's DNA and the evidence obtained from the crime scene. Defendant also cites decisions from other jurisdictions holding that only when law enforcement has previously recovered a comparison sample of DNA is there probable cause for a DNA search warrant.

The State, in response, argues that a DNA warrant does not require a heightened finding other than probable cause and that Delaware courts have expressly rejected the requirement that police obtain a DNA sample from the evidence seized from the crime scene before applying for a search warrant of the defendant's DNA. The purpose of collecting the buccal swab in this case was to compare Defendant's DNA to any DNA collected from the firearms and drug paraphernalia previously seized. Therefore, the magistrate could infer the potential availability of DNA on the seized items, as Affiant had listed its comparison as the reason for the search warrant.

This Court agrees with the State that a DNA warrant does not require a heightened finding other than probable cause.[9] This Court also agrees with the State that Delaware courts have rejected the requirement that the police obtain a DNA sample from the seized evidence before applying for a search warrant for the

---

[8] 2015 WL 5968901 (Del. Super. Oct. 5, 2015).

[9] *See State v. White*, 2017 WL 1842784, at *2 (Del. Super. May 8, 2017) ("A judicial officer must only issue a search warrant if the government has established probable cause . . . . A warrant involving authorization for a DNA swab is evaluated pursuant to these same standards.").

defendant's DNA.[10] Nonetheless, this Court holds that any inculpatory DNA evidence should be suppressed because the Affidavit failed to establish probable cause for the issuance of the warrant.

In *Campbell*, a detective received a warrant to obtain a sample of the defendant's DNA.[11] The police had not previously recovered a DNA sample from the evidence found at the crime scene, but stated in the affidavit that they believed it was "possible" to recover such a sample from the seized evidence.[12] The court reviewed decisions from other jurisdictions holding that "absent law enforcement recovery of a comparison sample of DNA, a DNA swab search warrant is unsupported by probable cause."[13] The court rejected this line of reasoning as going "too far," but held that "more is required [to establish a nexus between the defendant's DNA and the evidence at the crime scene] than the detective's unsupported belief that DNA may be recovered" – specifically, the affidavit "must be supported by [the affiant's] training, education, or experience" to "justify and explain" the affiant's conclusion that DNA could be recovered from the seized evidence.[14]

---

[10] *Id.* at *5 ("This Court does not accept the approach that a finding of probable cause should be automatically rejected on nexus grounds if the police do not recite in the affidavit that they have recovered a DNA sample from the crime scene to compare with a DNA sample sought from a suspect . . . . [T]his Court agrees with the *dicta* in the *Campbell* discussion."); *Campbell*, 2015 WL 5968901, at *5 (indicating that requirement that police obtain DNA evidence from seized evidence before applying for DNA search warrant "goes too far.").

[11] *Campbell*, 2015 WL 5968901, at *4.

[12] *Id.* at *4-5.

[13] *Id.* at *4 (citing, *e.g.*, *Hindman v. U.S.*, 2015 WL 4390009, at *22 (N.D.Ala. July 15, 2015) ("[T]he government must possess a testable DNA sample sufficiently linked to the subject crime, which might then be compared to the suspect's sample . . . . The testable DNA is necessary because DNA, like a fingerprint, is a means of identification and not, in and of itself, evidence of a particular crime."); *U.S. v. Myers*, 2014 WL 3384697, at *7 (D.Minn. July 10, 2014) (stating that government must obtain DNA sample from crime scene evidence before applying for search warrant).

[14] *Id.* at *5.

However, in *Campbell*, the police had never performed DNA testing on the evidence from the crime scene, and therefore there was no evidence to suppress.[15] Therefore, the court's analysis, while persuasive, is *dicta*.

In *White*, this Court again addressed the issue of whether an affidavit established a nexus between a defendant's DNA and physical evidence from the crime scene, thereby justifying the issuance of a warrant. As in *Campbell*, a judicial officer had issued a warrant allowing the affiant to obtain a sample of the defendant's DNA,[16] but the police had not yet recovered a DNA sample from evidence found at the crime scene.[17]

The court in *White* agreed with *Campbell* that a finding of probable cause is not precluded by a failure to obtain DNA evidence from the crime scene before applying for the DNA warrant.[18] However, in order for the police to demonstrate a nexus between the defendant's DNA and the physical evidence at the crime scene, the affiant must show "a **fair probability** that the seized sample of DNA can be linked to a crime."[19]

Upon review of the affidavit under the "fair probability" requirement, the court in *White* found the following factors to be significant:

1) The affiant had stated that, based upon his experience investigating homicides, DNA is often found at crime scenes, particularly on items of clothing worn by the perpetrator;

2) The affiant had stated his belief that the defendant's DNA would be found on evidence collected at the scene;

---

[15] *Id.* at *6.
[16] *White*, 2017 WL 1842784, at *2.
[17] *Id.* at *3.
[18] *Id.* at *5.
[19] *Id.* (emphasis in original).

3) Police had, according to the affidavit, found a dirt bike mask at the crime scene, and the police had been able to match a fingerprint found on the mask to the defendant; and

4) A dirt bike mask, "under common and ordinary understanding," is a tightly fitting article that would be more likely to retain hair or other materials containing DNA.[20]

The court concluded that, under the totality of the circumstances and giving due deference to the magistrate, the affidavit established a fair probability that the defendant's DNA would be found at the crime scene.[21]

In this case, as distinguished from *White*, there are no statements in the Affidavit regarding Affiant's training and experience in the collection, analysis, or presence of DNA evidence at crime scenes or on the specific types of items seized from this crime scene.[22] In addition, in contrast to *White*, there is no statement by Affiant that he believes DNA evidence will be found on the evidence collected at the Residence, i.e., that it is *probable* that such evidence will be found – instead, there is merely an inference that DNA evidence *might* be collected from the seized evidence ("the sample will be used to compare *any* DNA evidence that is collected" (emphasis supplied)).[23]

Although not as strong as the defendant's fingerprint on the dirt bike mask in *White*, there is some link in the Affidavit between Defendant and certain evidence found at the Residence – specifically, the evidence found in the room occupied by Defendant and Lindsey Harris. However, the specific types of items with which

---

[20] *Id.*

[21] *Id.*

[22] It was this deficiency, of course, that the court found to be crucial in the *Campbell dicta.*

[23] Again, the court in *Campbell* found an affiant's conclusory statement that it was "possible" to obtain DNA evidence from certain seized items to be insufficient to establish a nexus.

Affiant states that police wish to compare Defendant's DNA evidence – firearms and drug paraphernalia – would not necessarily be considered likely, under common and ordinary understanding, to retain materials containing DNA evidence, as would, for example, a dirt bike mask or other tight-fitting clothing.

As previously noted, this Court must pay great deference to a magistrate's determination of probable cause and must take a common-sense approach rather than a hyper-technical approach. Nonetheless, given the totality of the circumstances set forth in the Affidavit, including the absence of any indicated relevant training or experience and the failure to describe the likelihood of recovery of DNA from the seized evidence, this Court finds that the Affidavit in question fails to establish a fair probability that Defendant's DNA can be linked to a crime. Therefore, the warrant for Defendant's DNA is not supported by probable cause.

**WHEREFORE**, for the foregoing reasons, Defendant's motion to suppress is **GRANTED**, and any inculpatory DNA results will be suppressed at trial.

**IT IS SO ORDERED.**

_____
Noel Eason Primos, Judge

NEP/wjs
*Sent via email*
oc:    Prothonotary
cc:    Zachary A. George, Esquire
       Nicole S. Hartman, Esquire